IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RASHIDA NAJA SANFORD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. ) | 1:14CV885 |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Rashida Naja Sanford ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income Benefits on July 10, 2009, alleging a disability onset date of March 31, 2007. (Tr. at 278-83.)[1] Her applications were denied initially and upon reconsideration. (Tr. at 105-08). Thereafter, Plaintiff requested an administrative hearing de novo before an

---

[1] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

Administrative Law Judge ("ALJ"). (Tr. at 176-77.) Following the subsequent hearing on January 13, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act. (Tr. at 112-19). However, on June 14, 2012, the Appeals Council vacated the hearing decision and remanded the case for further proceedings. (Tr. at 125-27.) Plaintiff therefore appeared and testified at a second hearing on February 6, 2013, following which the same ALJ issued another unfavorable decision. (Tr. at 14-24.) On August 27, 2014, the Appeals Council denied review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is

evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be

4

Case 1:14-cv-00885-TDS-JEP   Document 17   Filed 03/09/16   Page 4 of 16

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ considered the period "from March 31, 2007 through the date of [the] decision [May 13, 2013]" (Tr. at 15), and concluded that Plaintiff engaged in substantial gainful activity from January 2010 through December 2011, but that "there has been a continuous 12-month period during which [she] did not engage in substantial activity." Plaintiff therefore met her burden at step one of the sequential evaluation process, and the ALJ went on to make findings addressing "the period(s) the claimant did not engage in substantial gainful activity." (Tr. at 17.) At step two, the ALJ determined that Plaintiff suffered from a single severe impairment: bipolar disorder with psychotic features. (Tr. at 17.) The ALJ found at step three that this impairment failed to meet or equal a disability listing. (Tr. at

---

determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

17-19.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform medium work with further limitations to simple, routine, repetitive tasks, only occasional exposure to the public, and no quota requirements. (Tr. at 19.) The ALJ next determined that the demands of Plaintiff's past relevant work exceeded her RFC. (Tr. at 22.) However, he concluded at step five, that, given Plaintiff's age, education, work experience, and RFC, along with the testimony of the vocational expert regarding those factors, she could perform other jobs available in the national economy and therefore was not disabled. (Tr. at 22-23.)

Plaintiff now argues that substantial evidence fails to support the ALJ's decision, although Plaintiff does not set out specific assignments of error, and instead generally challenges the ultimate disability determination and asserts that the ALJ "got it wrong." As discussed above, this Court undertakes only a limited review of the ALJ's decision to determine whether it was supported by substantial evidence, and the Court will not review the decision de novo to determine whether the ultimate disability determination was "right" or "wrong." See supra Part II. Nevertheless, upon review of Plaintiff's briefing, it appears that Plaintiff intends to raise two challenges to the ALJ's determination. First, Plaintiff challenges the ALJ's determination at step two of the sequential process, contending that the ALJ erred in including only bipolar disorder as a severe impairment, without considering Plaintiff's other alleged impairments. Second, Plaintiff challenges the ALJ's evaluation of Plaintiff's mental impairments and the formulation of her residual functional capacity. In her supplemental brief, Plaintiff raises an additional challenge, contending that the ALJ failed to assess her credibility in accordance with the Fourth Circuit's recent decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015). Having considered these contentions, for the reasons set out below,

the Court concludes that because the ALJ addressed only Plaintiff's mental impairment at step two, and did not address Plaintiff's alleged physical impairments anywhere in the decision or in the sequential evaluation process, remand is necessary so that the ALJ can address Plaintiff's alleged physical impairments in the first instance.

A. Step Two Determination

In his May 13, 2013 decision, the ALJ found at step two of the evaluation process that only Plaintiff's "bipolar disorder with psychotic features" constituted a severe impairment. (Tr. at 17.) In contrast, the same ALJ's January 24, 2011 decision included seven severe impairments: "lumbar degenerative disc disease, bipolar with psychotic features (schizoaffective disorder), drug, alcohol abuse, morbid obesity, hypertension, and asthma." (Tr. at 114.) Plaintiff now suggests that substantial evidence fails to support this change. As an initial matter, the Court notes that the ALJ's prior decision had no preclusive effect on the decision at issue here, as the 2011 decision was vacated and a new hearing was conducted.[4] In addition, "[a]s long as the ALJ determines that the claimant has at least one severe impairment

---

[4] As such, the ALJ's decision was not inconsistent with Acquiescence Ruling 00–1(4) and Albright v. Comm'r of SSA, 174 F.3d 473 (4th Cir. 1999). Under Acquiescence Ruling 00–1(4), "where a final decision of SSA after a hearing on a prior disability claim contains a finding required at a step in the sequential evaluation process for determining disability, SSA must consider such finding as evidence and give it appropriate weight in light of all relevant facts and circumstances when adjudicating a subsequent disability claim involving an unadjudicated period." AR 00–1(4) (S.S.A. Jan. 12, 2000); see also Lively v. Sec. of Health & Human Servs., 820 F.2d 1391, 1392 (4th Cir. 1987) (noting that res judicata applies to Social Security disability cases and "prevents reappraisal of both the Secretary's findings and his decision in Social Security cases that have become final"); Albright, 174 F.3d at 477–78 ("To have held otherwise would have thwarted the legitimate expectations of claimants—and, indeed, society at large—that final agency adjudications should carry considerable weight."). However, in this case, as noted above, the prior ALJ determination was vacated by the Appeals Council, and "the ALJ was not required to give weight to the findings made in the [earlier] decision, because it was vacated and not the final agency decision of the Commissioner." Monroe v. Colvin, No. 7:13–CV–74–FL, 2014 WL 7404136 at *2, *10 (E.D.N.C. Dec. 30, 2014); see also Batson v. Colvin, No. 7:14–CV–48–D, 2015 WL 1000791 (E.D.N.C. Mar. 5, 2015) ("Here, Albright and AR 00–1(4) did not require the second ALJ to consider the first ALJ's decision because that decision had been vacated, and thus no finding remained to be considered in the subsequent determination.").

7

and proceeds to discuss all of the medical evidence, any error regarding failure to list a specific impairment as severe at step two is harmless." McClain v. Colvin, No. 1:12CV1374, 2014 WL 2167832, at *4 (M.D.N.C. May 23, 2014) (citations omitted).[5]

Nevertheless, in this case, the Court notes that the ALJ's 2013 decision fails to address in any way Plaintiff's medical evidence and contentions regarding her physical impairments. Although the 2011 decision was vacated and is not binding, the 2011 decision did include a summary of the evidence of Plaintiff's physical impairments, and that underlying evidence was still part of the record at the time of the 2013 decision. That underlying evidence included medical evidence from Triangle Orthopedic Associates from April 17, 2009, noting that Plaintiff was "able to participate in work activities with no lifting more than 20 pounds, no repetitive bending or lifting from the ground, and sit/stand alternately throughout the day," (Tr. at 116), and evidence of treatment for asthma and assessment of "moderate persistent

---

[5] "Step two is a threshold determination of whether claimants have a severe impairment (or combination of impairments) that meets the twelve-month duration requirement and significantly limits their ability to do basic work activities." Hammond v. Astrue, Civil Action No. TMD 11-2922, 2013 WL 822749, at *2 (D. Md. Mar. 5, 2013); see also 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii) (2010). "If the Commissioner finds no severe impairments, the claimant is not disabled and the analysis does not proceed to the other steps. However, if a claimant does have a severe impairment or combination of impairments, the ALJ must consider the effects of both the severe and non-severe impairments at the subsequent steps of the process, including the determination of RFC." Id.; see also 20 C.F.R. § 404.1523 (2010); SSR 96–8p, 1996 WL 374184, at * 5 (1996); SSR 86–8, 1986 WL 68636, at *5 (1986). If the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant. See Thomas v. Comm'r, Soc. Sec. Admin., No. SAG–11–3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error where ALJ continued with sequential evaluation process and considered both severe and non-severe impairments); Kenney v. Astrue, No. CBD–10–1506, 2011 WL 5025014, at *5 (D. Md. Oct. 20, 2011) (declining to remand for failure to classify an impairment as severe because it would not change the result)." Rivera v. Astrue, No. CBD-12-1095, 2013 WL 450781, at *7 (D. Md. August 22, 2013).

8

asthma with mild exacerbation" on April 2, 2010 (Tr at 117).[6] Based on that evidence, the ALJ's 2011 decision included an RFC of "light work" with "breathing precautions."

The ALJ's 2013 decision simply omits any discussion of this underlying medical evidence of physical impairments. It is not clear why the alleged physical impairments were omitted from the decision, as Plaintiff raised these impairments throughout the administrative proceedings and continued to raise the physical impairments at the 2013 hearing. (Tr. at 283, 296, 311, 318, 324, 329, 340, 369, 370.) For example, at the 2013 hearing, Plaintiff asserted that she had "always worked," and that when she had not it was "because of back problems. . . not because I didn't want to work." (Tr. at 40.) Plaintiff also testified that she still slept sitting up in a chair. (Tr. at 43.) In addition, in providing her updated medical information, Plaintiff noted that, "I still have hip and back condition. . . . I have tried to work but still not able to work due to back and chest pain." (Tr. at 370.) At the 2013 hearing, counsel for Plaintiff also cited to Plaintiff's physical impairments, noting that the ALJ previously found "numerous severe impairments, lumbar and degenerative disc disease, bipolar psychotic features, schizoaffective disorder, drug, alcohol abuse, morbid obesity, hypertension and asthma," and that these impairments in combination rendered Plaintiff disabled, even if none "of those alone necessarily establishes disability." (Tr. at 49.) The ALJ did not include any of Plaintiff's contentions regarding her physical impairments in his 2013 decision, and the 2013 decision ultimately adopted an RFC of "medium work" without explanation, and with no limitation for breathing precautions.

---

[6] In addition, Dr. Cohen's Physical Residual Functional Capacity Assessment on February 18, 2010, found that Plaintiff could perform light work, and should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. at 504-510.)

9

In the circumstances, the Court is compelled to find that the ALJ erred by failing to address at all Plaintiff's contentions and the relevant medical records supporting Plaintiff's allegations regarding her physical impairments. See Hudson v. Colvin, No. 7:12-CV-269-FL, 2013 WL 6839672, at *4, 7 (E.D.N.C. Dec. 23, 2013) (noting that "[i]t hardly bears repeating that an ALJ is required to consider all relevant evidence and to sufficiently explain the weight he gives to probative evidence[,]" and stating that the ALJ's "silence regarding [relevant medical assessments] raises the question whether [the ALJ] even considered this evidence"). While the ALJ was free to give little probative weight to these omitted medical records, "he must say so and explain why." Carter v. Colvin, No. 5:12-CV-736-FL, 2014 WL 351867, at *7 (E.D.N.C. Jan. 31, 2014) (internal quotation and alteration omitted). Here, although the RFC includes a "medium work" limitation, the ALJ did not discuss any medical evidence related to Plaintiff's physical impairments. The Court acknowledges that an ALJ's "failure to discuss every specific piece of evidence does not establish that she failed to consider it." Mitchell v. Astrue, No. 2:11-CV-00056-MR, 2013 WL 678068, at *7 (W.D.N.C. Feb. 25, 2013) (internal quotation and alteration omitted). However, the ALJ's decision must still ultimately "reflect that she conducted a thorough review of the evidence before her." Id. In the instant case, the ALJ's decision omitted all discussion of Plaintiff's physical impairments and the related medical evidence. Thus, the ALJ's failure to address the additional alleged impairments at step two of the evaluation process is not harmless, since the relevant medical evidence was not addressed at any point in the evaluation process, and the additional alleged impairments remain completely unaddressed. Ultimately, the ALJ's omissions render the Court unable to meaningfully review the ALJ's decision to determine if it is supported by substantial evidence.

The Court has considered the possibility that the ALJ intended to incorporate into the 2013 decision his prior 2011 discussion and analysis related to Plaintiff's physical impairments. However, no such explanation was provided by the ALJ in the 2013 decision. Moreover, even if that were the ALJ's intent, the Court is still left without sufficient explanation of the ALJ's determination, as there is no explanation of the change in RFC from light to medium work, nor is there an explanation for the elimination of the restriction for breathing precautions.[7]

The Commissioner contends that the limitation to "medium" work in the 2013 decision reflects that the ALJ "clearly considered" Plaintiff's non-severe, physical impairments in accordance with 20 C.F.R. § 404.1523, SSR 96–8p, and SSR 86–8. (Def. Br. at 15.) Indeed, the ALJ expressly stated that, in assessing Plaintiff's RFC, he "considered the combined effect of the above-listed severe impairments as well as the other non-severe medically determinable conditions." (Tr. at 22.) However, there is simply nothing in the 2013 decision that describes the non-severe conditions, the relevant medical treatment records, or any basis for concluding that the conditions limited her to medium work. See Hudson, 2013 WL 6839672, at *8 (noting that "boilerplate representations [in the ALJ's decision] that he considered all the evidence" did not alleviate the court's concerns that the ALJ failed to consider various relevant medical assessments).

---

[7] Moreover, the ALJ's decision states that it covers the period from March 31, 2007 to May 13, 2013, which potentially included periods from March 31, 2007 to December 31, 2009, and from January 1, 2012 to May 13, 2013, when Plaintiff was not engaged in substantial gainful activity, and the ALJ's decision does not address these separate time periods. It appears that Plaintiff subsequently suggested an amended alleged onset date of January 1, 2012, but the ALJ's decision still purports to cover the entire period from March 31, 2007. (Tr. at 616, 15.) In any event, the ALJ's failure to address in any way the physical limitations reflected in the earlier medical records leaves the Court without a sufficient basis on which to undertake judicial review.

11

Finally, the Commissioner contends that "[a]lthough Plaintiff complained of back and hip pain in 2009 and alleged a June 2009 onset date, she worked at the substantial gainful activity level in 2010 and 2011 . . . . [and] [a]ccordingly, those impairments were not disabling." (Def. Br. at 15.) The Court has considered this contention. However, while Plaintiff's alleged physical impairments may not alone have rendered her disabled in 2010 and 2011 given her ability to engage in substantial gainful activity, it does not follow that the ALJ may completely ignore evidence of physical impairments that, while not alone disabling, still must be addressed in determining Plaintiff's RFC. See SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim."). As previously noted in this District:

> Under 42 U.S.C. § 423(d)(2)(B), an ALJ must consider the combined effect of all physical and mental impairments when determining a claimant's disability status. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989); Hines v. Bowen, 872 F.2d 56, 59 (4th Cir.1989) (per curiam); Hicks v. Gardner, 393 F.2d 299, 301–02 (4th Cir.1968). An ALJ must consider "the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately" would be of a sufficient medical severity to constitute a "listed impairment." 42 U.S.C. § 423(d)(2)(C); accord 20 C.F.R. §§ 404.1523, 404.1526(a); see also 20 C.F.R. § 404.1525(e) (requiring ALJs to consider all impairments in combination when assessing the residual functional capacity); SSR 96–8p (same). This statutory and regulatory requirement compels the ALJ to consider the cumulative, compounding, or synergistic effect of the claimant's individual impairments instead of "fragmentiz[ing]" them or evaluating them in isolation. Walker, 889 F.2d at 50 ("It is axiomatic that disability may result from a number of impairments which, taken separately, might not be disabling, but whose total effect, taken together, is to render claimant unable to engage in substantial gainful activity."); accord, e.g., DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir.1983); Oppenheim v. Finch, 495 F.2d 396, 398 (4th Cir.1974);

12

Washington v. Comm'r, 659 F.Supp.2d 738, 745 (D.S.C.2009); Lemacks v. Astrue, No. 8:07–2438–RBH–BHH, 2008 U.S. Dist. LEXIS 110165, at *10, 2008 WL 2510087 (D.S.C. May 29, 2008), adopted by 2008 U.S. Dist. LEXIS 47350, 2008 WL 2510040 (D.S.C. June 18, 2008). . . . "As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effect of the impairments." Walker, 889 F.2d at 50. The ALJ must make a "particularized," or "specific and well-articulated," finding regarding the combined effect. Hines, 872 F.2d at 59 ("The ALJ must make a *particularized finding* on the effect of the combination of impairments." (emphasis added)); Cook v. Heckler, 783 F.2d 1168, 1174 (4th Cir.1986) (stating that the ALJ must make a "specific and well-articulated finding as to the effect of the combination of impairments" (emphasis added)). The ALJ may not merely consider each impairment in isolation.

Money v. Astrue, No. 1:08-CV-895, 2011 WL 3841972, at *8 (M.D.N.C. Aug. 26, 2011). Thus, even if Plaintiff's ability to work in 2010 and 2011 demonstrates that her physical impairments were not alone disabling, that would not preclude consideration of her alleged physical impairments in combination with her mental impairments in formulating the RFC, particularly where, as here, the ALJ concluded that the Plaintiff could not return to that past work because of her mental impairments.[8]

---

[8] It may have been that Plaintiff's ability to work in 2010 and 2011 as a hairdresser and a babysitter led that ALJ to conclude that despite the prior medical opinions, Plaintiff no longer suffered from any physical limitations. However, no such explanation is included in the ALJ's decision. Moreover, medical evidence from 2013 was not addressed, and the medical record from 2012 and 2013 was not developed. In this regard, the Court notes that there is at least some additional evidence in the record with regard to Plaintiff's impairments in 2012 and 2013, although the record is not complete. For example, Plaintiff underwent gastric bypass surgery in 2012 and was followed by UNC physicians, but no additional information from 2012 is included in the record. Similarly, later records indicate that Plaintiff was seen in October 2012 by Dr. Susan Vebber, who prescribed antipsychotic medications, but no records from Dr. Vebber are included in the record. (Tr. at 617.) Plaintiff also indicates ongoing treatment by Dr. Reddy at UNC Family Practice, including prescriptions for an asthma inhaler, and Plaintiff also notes a hospitalization at Wake Hospital for chest pain in 2012. (Tr. at 369-370.) In addition, although not addressed by the ALJ, Plaintiff's treatment records from 2013 indicate that she was admitted to the hospital on February 7, 2013, apparently following a suicide attempt, and that she was discharged on February 11, 2013, with a diagnosis of major depressive disorder and with prescriptions for antipsychotic medication, and also with prescriptions for medications for asthma and for pain. (Tr. at 631-632). The Court also notes that Plaintiff's alleged physical impairments, including her asthma, could raise issues in light of the ALJ's finding at step five that she could perform other work as an industrial sweeper cleaner, a laundry bundle clerk, or a commercial housekeeper. (Tr. at 23.) In the circumstances, the Court simply cannot determine the basis for the ALJ's decision or whether that decision was supported by substantial evidence.

Having considered the Commissioner's contentions, the Court concludes that resolution of Plaintiff's allegations of physical impairments "would require excessive intrusion into the ALJ's domain." Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726 at *3 (M.D.N.C. March 25, 2014).[9] As noted in Anderson, while the Court may make simple conclusions of law in finding that an ALJ's error is harmless, the Court may not "parse the administrative transcripts and make . . . dispositive findings of fact that the ALJ did not make." Id. at *4. Here, accepting the Commissioner's arguments would require the Court to do just that. Therefore, remand is required so that these matters can be addressed by the ALJ in the first instance.

B.     Disabling Functional Limitations

Plaintiff also contends that substantial evidence fails to support the ALJ's finding that her mental limitations did not result in disabling functional limitations. In effect, she challenges the ALJ's RFC assessment and the vocational expert's reliance upon it at step five. Given the conclusion above that remand is required as set forth in Part A, and because any

---

[9] In Anderson, the Court noted that "[r]eview of the ALJ's ruling is limited further by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions. . . . Under the doctrine, a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency. . . . If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.'" Id. at *1 (quoting Sec. & Exch. Comm'n v. Chenery Corp., 332 U.S. 194 (1947)). In applying this doctrine in Anderson, the Court noted that "jurisprudence on this issue is far from clear," and "this court will err on the side of caution" and avoid "excessive intrusion into the ALJ's domain." Id. at *3.

subsequent determination by the ALJ will take all of these matters into account, the Court need not reach this separate issue at this time.[10]

C.   Credibility

Finally, Plaintiff also contends that the ALJ's use of boilerplate language when assessing Plaintiff's credibility renders his finding defective under Mascio v. Colvin. In Mascio, the Fourth Circuit held that the ALJ erred by determining the plaintiff's residual functional capacity before assessing her credibility. 780 F.3d at 639. In that case, the ALJ applied boilerplate language which stated, in pertinent part, that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." Id. (citation omitted). In the present case, however, the ALJ found that Plaintiff's statements "are not entirely credible for the reasons explained in this decision." (Tr. at 21.) Unlike the language in Mascio, this boilerplate does not imply "that ability to work is determined first and is then used to determine the claimant's credibility." 780 F.3d at 639 (quotation omitted).

The Court notes that Plaintiff may be intending to challenge the substance of the ALJ's credibility determination and the extent to which that credibility determination is supported by substantial evidence. However, in light of the remand determination set forth in Part A above, the Court need not consider this issue further, as any credibility determination will be before the ALJ on the remand of this matter.

---

[10] Plaintiff particularly challenges the Commissioner's contention that the ALJ properly relied on Plaintiff's "failure to engage in consistent, routine treatment." Specifically, Plaintiff contends that any such failure is a result of her mental illness. See Pate-Fires v. Astrue, 564 F.3d 935, 945 (8th Cir. 2009); Preston v. Heckler, 769 F.2d 988, 990-91 (4th Cir. 1985). As noted above, in light of the remand required in Part A, the Court need not consider this issue further at this time, as all of these matters may be addressed further by the ALJ on remand.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #14] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 9th day of March, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge
